Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                                      1:20-cv-11097

| | |
|---|---|
| Donna Brietzke, Damara Alicea, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| - against - | Class Action Complaint |
| Chobani, LLC, | |
| Defendant | |

      Plaintiffs alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge: Damara Alicea Donna Brietzke

      1.    Chobani, LLC ("defendant") manufactures, labels and markets Greek yogurts claiming to contain "45% Less Sugar Than Other Yogurts*" ("Product").



2.      Defendant's bold "Less Sugar" claim is enticing to consumers seeking to reduce sugar, but it is also misleading.

3.      In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[1]

4.      The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[2]

5.      There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[3]

6.      In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[4]

7.      At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

8.      In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[5]

9.      As another observer of the food industry explained in May, 2017: "[h]ealth concerns

---

[1] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[2] Id.
[3] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[4] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[5] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.

and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products in the coming year.   .   ."[6]

10.    Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[7]

11.    Though consumers seek to reduce their sugar consumption, they still want foods that are sweet.

12.    Nutritive sweeteners are those that contain calories, like traditional white table sugar, and honey.

13.    Non-nutritive sweeteners provide sweetness with minimal, if any calories and include plant-based stevia and monk fruit extract.

14.    Credible survey evidence shows that a significant percentage of consumers consider non-nutritive sweeteners as acceptable substitutes for nutritive sweeteners.

15.    Consumers regularly purchase yogurts that have nutritive and non-nutritive sweeteners.

16.    In fact, when asked about their preferred substitutes for refined white sugar in food, over 25% identified non-nutritive, plant-derived sweeteners, which include stevia and monk fruit.

17.    Another 20% chose zero calorie synthetic sweeteners as a viable method of reducing their sugar consumption.

---

[6] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[7] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018

18.    The FDA has stated that yogurts can be flavored with any safe and suitable sweetening ingredients, which includes nutritive and non-nutritive sweeteners.

19.    The FDA also stated that the production of yogurt with either type of sweetener does not affect the basic nature and essential characteristics of yogurt.

20.    In seeking to cut back on sugar consumption, consumers rely on nutrient content claims to tell them important product information in a concise format. 21 C.F.R. § 101.13 ("general principles").

21.    "Relative [nutrient content] claims" provide a basis for comparing the level of a nutrient in one food to its level in another. 21 C.F.R. § 101.13(j) (including "light," "reduced," "less" and "more"); 21 C.F.R. §§ 101.54-101.69 ("Subpart D—Specific Requirements for Nutrient Content Claims").

22.    In making a relative claim that uses the term "less," the reference food must be (1) representative of the type of food that includes the product that bears the claim or (2) the manufacturer's regular product. 21 C.F.R. § 101.13(j)(1)(ii)(A); 21 C.F.R. § 101.13(j)(1)(ii)(B).

23.    A reference food can be a dissimilar food within a product category that can be substituted for one another in the diet (e.g., potato chips as reference for pretzels) or a similar food (e.g., potato chips as reference for potato chips). 21 C.F.R. § 101.13(j)(1)(i)(A).

24.    A manufacturer's regular product provides a reference to a known specific food and consequently provides a meaningful basis for comparative claims which compare one product directly to another.

25.    These requirements allow companies to make comparisons which are useful to consumers on foods that are generally interchangeable in the diet (for example, "apples have less fat than potato chips").

26.     These criteria are intended to prevent a company from cherry-picking data so it can make a more favorable, yet misleading comparison, at the expense of consumers.

27.     The Product states "45% Less Sugar Than Other Yogurts*," which is a relative nutrient content claim for sugar. 21 C.F.R. § 101.60(c)(5) ("The terms "reduced sugar," "reduced in sugar," "sugar reduced," "less sugar," "lower sugar" or "lower in sugar" may be used on the label or in labeling of foods…provided that…").

28.     Relative nutrient content claims for sugar are required to be based on a validly selected reference food. 21 C.F.R. § 101.60(c)(5)(i) ("The food contains at least 25 percent less sugar per reference amount customarily consumed than an appropriate reference food as described in § 101.13(j)(1)").

29.     Defendant's "Other Yogurts" purport to represent such a reference food, with the information panel disclosure stating "*Chobani® Less Sugar Greek Yogurt: 9g sugar per 5.3oz; other yogurts: avg. 17g sugar per 5.3oz."

30.     However, Defendant's "Other Yogurts" excludes similar yogurts that consumers regard as sufficiently similar alternatives to its Product, because they contain non-nutritive sweeteners.

31.     When non-nutritive sweetened yogurts are included in the "other yogurts," the average amount of sugar is 12.22g per 5.3 oz instead of 17g.

32.     This means the representation that the Product has 45% less sugar than other yogurts is false, deceptive, misleading and unlawful.

33.     Instead, the Product only has 25% less sugar when accurately compared.

34.     Reasonable consumers are unable to know or find out that Defendant's comparative sugar reduction claim is based upon cherry-picking the data it used to arrive at its "45% Less

Sugar" claim.

35.    The effect of excluding such products from its calculation of an appropriate reference food is to give the impression that the Product has significantly less sugar than it does, relative to other yogurts which have significantly less sugar than it has.

36.    The reason why requirements exist in selecting reference foods is because this information is intended to not only tell consumers about the manufacturer's product, but also tells them about other products.

37.    Since the Product tells consumers information about its sugar content *and* the sugar content of other yogurt products, consumers will feel they do not need to review other products to find a suitable choice in seeking a sugar-reduced yogurt.

38.    Defendant's "45% Less Sugar" claim means consumers will choose its Product and overlook others which would be nutritionally more appropriate in helping them reduce their sugar consumption.

39.    This means consumers will not consider the range of yogurts that can satisfy their requirements, like those containing non-nutritive sweeteners like sucralose or stevia.

40.    Based on consumer substitution between nutritive and non-nutritive sweeteners, and acceptance of both, they are misled by Defendant's "45% Less Sugar" claim into purchasing the Chobani product, expecting a greater sugar reduction than they receive.

41.    The value of the Product that plaintiffs purchased was materially less than its value as represented by defendant.

42.    Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them.

43.    The Product is sold for a price premium compared to other similar products, no less

than $2.99 for 5.3 OZ, higher than it would otherwise be sold for absent the misleading representations.

Jurisdiction and Venue

44.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

45.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

46.    Plaintiff Donna Brietzke is a citizen of Massachusetts.

47.    Defendant Chobani, LLC is a Delaware limited liability company with a principal place of business in Norwich, Chenango County, New York and though at least one member of Defendant is a citizen of New York, upon information and belief, at least one member of defendant is not a citizen of New York.

48.    "Minimal diversity" exists because plaintiff Donna Brietzke and defendant are citizens of different states.

49.    Upon information and belief, sales of the Product and statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

50.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here - plaintiff Damara Alicea's purchase of the Product.

51.    Venue is further supported because many class members reside in this District.

Parties

52.     Plaintiff Donna Brietzke is a citizen of Melrose, Middlesex County, Massachusetts.

53.     Plaintiff Damara Alicea is a citizen of Bronx, Bronx County, New York.

54.     Defendant Chobani, LLC is a Delaware corporation with a principal place of business in Norwich, New York, Chenango County.

55.     During the relevant statutes of limitations for each cause of action alleged, plaintiffs purchased the Product within their district and/or State in reliance on the representations of the Product.

56.     Plaintiff Brietzke bought the Product at one or more locations, including Shaws, 34 Essex St, Melrose, MA 02176, between September 13 and September 20, 2020, among other times.

57.     Plaintiff Alicea bought the Product at one or more locations, including Whole Foods, 1 Ridge Hill Boulevard, Yonkers, NY 10710, in November and/or December 2020, among other times.

58.     Plaintiffs bought the Product at or exceeding the above-referenced price because they liked the product for its intended use and consumption and relied upon the representations and the impression conveyed as to the Product's relative sugar content.

59.     Plaintiffs consider non-nutritive sweeteners as substitutes for nutritive sweeteners when purchasing yogurt.

60.     Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

61.     The Product was worth less than what Plaintiffs paid for it and they would not have paid as much absent Defendant's false and misleading statements and omissions.

62.     Plaintiffs intends to, seeks to, and will purchase the Product again when they can do so with the assurance that Product's labeling is consistent with its composition.

8

Class Allegations

63.   The class will consist of all purchasers of the Product who reside in Massachusetts and New York during the applicable statutes of limitations.

64.   Plaintiffs seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

65.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

66.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

67.   Plaintiffs are adequate representative because their interests do not conflict with other members.

68.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

69.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

70.   Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

71.   Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

72.   Plaintiffs incorporate by reference all preceding paragraphs.

73.   Plaintiffs and class members desired to purchase a product with a reduced sugar content and were enticed to buy Defendant's Product on the basis that 45% less sugar was a

substantial reduction compared to other yogurts.

74.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

75.    Defendant misrepresented the Product through its statements, omissions, ambiguities and actions.

76.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

77.    Plaintiffs incorporate by reference all preceding paragraphs.

78.    Defendant misrepresented the Product.

79.    This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

80.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

81.    Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

82.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

83.    Plaintiffs incorporate by reference all preceding paragraphs.

84.    Defendant misrepresented the attributes and qualities of the Product.

85.    Defendant's fraudulent intent is evinced by its failure to accurately identify the

Product's relative sugar content, when it knew not doing so would mislead consumers.

86.     Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

87.     Plaintiffs incorporate by reference all preceding paragraphs.

88.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   December 31, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-11097
United States District Court
Southern District of New York

Donna Brietzke, Damara Alicea, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

Chobani, LLC,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
   Tel: (516) 268-7080
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: December 31, 2020

/s/ Spencer Sheehan
Spencer Sheehan